# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 3871 |
| | ) Judge Joan Gottschall |
| BILL KAY CHRYSLER PLYMOUTH, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS COUNTS VI AND VII OF PLAINTIFF'S AMENDED COMPLAINT AND TO STAY AND COMPEL ARBITRATION

## I.

## INTRODUCTION

On January 26, 2001, plaintiff purchased a used 1997 Chrysler Sebring from Bill Kay Chrysler Plymouth ("Bill Kay"). At the time, he signed, among other things, an Arbitration Agreement (Exhibit 1) wherein he agreed to arbitrate all disputes arising from the purchase. He signed the Arbitration Agreement in a space less than one inch below the following statement:

> BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU
> HAVE READ THIS ARBITRATION AGREEMENT AND THAT
> YOU AGREE TO ITS TERMS AND CONDITIONS.

Claiming that the Sebring's odometer was inaccurate, plaintiff filed this lawsuit. After Bill Kay moved to stay these proceedings, plaintiff responded with an affidavit ("Aff."), and a claim that there was no agreement to arbitrate. Although plaintiff did not deny signing the Arbitration Agreement, he claimed that he was not shown the Arbitration Agreement in its entirety (Aff. ¶ 4), and that the "first time I was made aware of such an agreement was when my attorney told me of its existence "after the commencement of this lawsuit." (Aff., ¶ 6) However,

he admitted that he was given a "brief explanation of each" document he had signed. (Aff., ¶ 5) No other arguments against arbitration were offered.

Bill Kay then provided the affidavit of Steve Flores, which demonstrated that Morgan's statements were either untrue or, at least, contested. Thereafter, on October 1, 2001, this Court denied Bill Kay's motion without prejudice and provided plaintiff with an opportunity to file an amended complaint. The Court's order assumed that plaintiff was contending that he never agreed to arbitrate, and plaintiff was asked to "amend his complaint to lay out his theory of fraud." The Court cautioned that any amendment must comply with Rule 9(b), and the Court explained that:

> "Only if plaintiff lays out his theory of fraud, can the court determine with reasonable certainty whether plaintiff is merely claiming fraud in the inducement (a matter for the arbitrator), or is adequately alleging that he never agreed to arbitrate."

Plaintiff then filed an amended complaint. Instead of seeking to void the Arbitration Agreement, plaintiff has added two new counts wherein he seeks to recover damages alleged caused by virtue of his having executed the Arbitration Agreement. In Count VI, he alleges that Ogden violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") by not explaining the nature of the Arbitration Agreement, and he seeks damages resulting from the fact that he "unwillingly gave up his rights to a jury trial and to recover punitive damages and attorneys' fees." (Count VI, ¶ 68) Count VII is identical to Count VI, except it seeks damages under a common law fraud theory. The relief sought in Counts VI and VII is identical to the relief sought in the first five counts of the amended complaint.

Significantly, plaintiff does not allege that the Arbitration Agreement was hidden from his view, or that he thought he was signing something else. Instead, in an apparent conflict with

his earlier affidavit, he now alleges that he was told nothing about what he was signing (¶¶ 48 and 50) or "if" he was told something, it must have been untrue. (¶ 51)

Defendant has filed a motion to strike Counts VI and VII because they fail to comply with the pleading requirements of Rule 9(b). The motion also seeks to stay these proceedings and to compel plaintiff to submit his claims to arbitration.

Plaintiff has filed a Response, in which he argues that his amended complaint does comply with Rule 9(b). Although it appears that his new counts attempt to allege fraud in the inducement (which, as this Court noted is "a matter for the arbitrator"). Plaintiff then devotes most of the Response to three arguments as to why the Arbitration Agreement should be disregarded. Those arguments, which were not made when plaintiff addressed Bill Kay's first motion to compel arbitration, are as follows:

    a.    The Arbitration Agreement is unconscionable.

    b.    The Arbitration Agreement is contrary to public policy.

    c.    The Arbitration Agreement should not be enforced because plaintiff's signature was obtained by fraud.

This reply memorandum will address plaintiff's arguments.

## II.

### PLAINTIFF HAS FAILED TO PROPERLY AND ADEQUATELY PLEAD FRAUD

In our motion and supporting memorandum, we argued that plaintiff's amended complaint failed to comply with Rule 9(b) because it failed to set forth a false statement of material fact, that the person making the statement knew it to be false, and reliance on the statement. Such allegations are necessary to properly plead fraud. *Damain Services Corp. v. White*, 1998 WL 596466 (N.D. Ill. 1998); *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d

968 (2nd Dist. 1995). The Seventh Circuit has referred to this as "the who, what, when, where and how" of the fraud being alleged. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In his Response (at p. 4)[1], plaintiff, without citation to any authority, suggests that Rule 9(b) "should not be seen as requiring exacting pleadings of fact." Yet that is precisely what the rule and the cases decided thereunder do require.

Plaintiff goes on to argue (Response, pp. 5-6) that his pleading was sufficient because:

1. Bill Kay's unnamed "sales person" failed to properly explain the documents he (plaintiff) was asked to sign.

2. The effect of the Arbitration Agreement was not explained to him[2], or if an explanation was given, the explanation (which plaintiff does not plead) was false.

3. If plaintiff had known that certain unspecified representations "were untrue," he would not have purchased the vehicle if he had known that he was giving up the right to a jury trial, punitive damages, and attorneys' fees.

Plaintiff's attempt to camouflage his pleading deficiencies are, for a number of reasons, interesting. First, he alternatively argues that no representation (thus no misrepresentation) was made, but if one was made, it was misleading. That, of course, does not come close to satisfying the requirements of Rule 9(b). Second, he does not even attempt to identify the person who either failed to explain the Arbitration Agreement, or who alternatively stated an unspecified

---

[1] The pages of the Response are not numbered. The reference is found on the fourth page of the Response.

[2] Plaintiff's July 18, 2001 affidavit conflicts with his complaint. In that the affidavit (at ¶ 5), he admits that brief explanations of the documents he signed were provided.

4

misrepresentation. Rather, he believes it is sufficient to attribute the silence (or the misrepresentation) to unnamed salespersons.[3]

Third, plaintiff's reliance argument is fatally undercut by the very document he signed.[4] While he claims that he would not have given up his right to a jury trial, or to recover punitive damages and attorneys' fees, the Arbitration Agreement (Ex. A) contains the following language:

> "By agreeing to arbitrate, you and we are giving up some rights, including the right to go to court, the right to a jury trial, and any right that buyer may have to seek punitive damages."

\*\*\*

> "The arbitrator shall not have the right to award punitive damages or attorneys' fees to either party."

Plaintiff, of course, does not suggest that he was not given an opportunity to read the Arbitration Agreement before he signed it (on a line immediately below a large print, capitalized acknowledgment of having read the Arbitration Agreement). If he failed to take that opportunity, he cannot claim to have been a victim of fraud. *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574-5 (7th Cir. 2001); *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999).

In our initial memorandum, we cited (at p. 4) six rulings from judges of this Court wherein complaints, with considerably more specificity than plaintiff's here, were found to be deficient. Plaintiff has not elected to address those rulings. The omission is telling, because

---

[3] One wonders how Bill Kay is to respond to a claim that an unnamed person did not say something. Given the alternative nature of the complaint, perhaps the allegation should be both admitted and denied.

[4] Plaintiff does not deny signing the Arbitration Agreement. As such, it is difficult to understand how he could claim that "he never agreed to arbitrate."

5

quite simply, any analysis of the complaint demonstrates it to be deficient. As such, his apparent claim that the Arbitration Agreement is not enforceable because it was obtained by fraud must fail.

### III.

### THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

In his Response (at pp. 8-10), plaintiff claims that the Arbitration Agreement is unconscionable because it exempts certain "wrongdoing" by the buyer from the obligation to arbitrate. In support of that contention, plaintiff cites cases that he claims hold that contracts are unconscionable where they are "improvident, oppressive or totally one sided," and he notes that a factor to consider includes gross disparity in bargaining terms. However, Morgan's response does not suggest that any of those factors were present. Had he made such a suggestion, his argument would still be without legal merit. He also relies on *Walter E. Heller Co., Inc. v. Convalescent Home of the First Church of Deliverance*, 49 Ill.App.3d 213, 219, 365 N.E.2d 1285 (1st Dist. 1977), in support of a claim that the Arbitration Agreement created a "one sided contract clause" brought about by Bill Kay, the "stronger party." This argument was not made when plaintiff resisted Bill Kay's first motion to stay and compel arbitration. Moreover, it is not contained in the amended complaint. In any event, it is without merit, because the Arbitration Agreement, which obligates Bill Kay to arbitrate disputes as well, is not one-sided.

Recently, the United States Supreme Court had an opportunity to reject claims of unconscionability and to enforce an agreement to arbitrate. In *Green Tree Financial Corporation - Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513 (2000), a purchaser of a mobile home filed a lawsuit which alleged a violation of the Truth In Lending Act. The plaintiff, like plaintiff here, had signed an agreement which required all disputes to be submitted to arbitration.

6

The plaintiff, like plaintiff here, claimed that the arbitration agreement was unconscionable and should not be enforced. However, the Supreme Court refused to hold that the arbitration agreement was unenforceable, and instead upheld its validity. (121 S.Ct. at 523)

Plaintiff's claim that an Arbitration Agreement is somehow one-sided and that this provides a basis for ignoring an Arbitration Agreement is also flawed. The law is clear that unequal bargaining positions do not provide a basis for voiding an Arbitration Agreement. *See, We Care Hair Development, Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 333 (7th Cir. 1987); *Parker v. American Family Insurance Co.*, 315 Ill.App.3d 431, 734 N.E.2d 83, 85 (3rd Dist. 2000). This Arbitration Agreement is not one sided - after all, both parties must submit disputes to arbitration, and arbitrations conducted by the neutral and well respected American Arbitration Association can hardly be considered "oppressive."

Similarly, plaintiff cannot make the Arbitration Agreement simply go away by claiming that unequal bargaining positions render it "unconscionable." He must demonstrate something more than the mere allegation. *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir. 1984). As part of his claim of unconscionability, plaintiff must also show that the Arbitration Agreement was "due to a prodigious amount of bargaining power on behalf of the stronger parties, which is used to the stronger party's advantage <u>and is unknown to the lesser party</u>"... *See, Weaver v. American Oil*, 276 N.E.2d 144 (Ind. 1971), (emphasis added) cited with approval in *Furgason v. McKenzie Check Advance of Indiana*, 2001 WL238129, *5 (S.D. Ind., Jan. 3, 2001). Where, as here, a party has signed a separate Arbitration Agreement, it is enforceable, even if the party failed to inquire into its ramifications. *Pierson, supra*, 742 F.2d at 339, *Ferguson, supra*, at *5. Moreover, unequal bargaining positions do not provide a basis for voiding an Arbitration Agreement. *See, We Care Hair Development, Inc. v. Engen*, 180 F.3d

7

838 843 (7th Cir. 1999); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326 333 (7th Cir. 1987); *Parker v. American Family Insurance Co.*, 315 Ill.App.3d 431, 734 N.E.2d 83, 85 (3rd Dist. 2000). Only one sided or oppressive Arbitration Agreements can be voidable. As noted above this Arbitration Agreement is neither one sided nor oppressive. *Id.*

Finally, plaintiff's reliance on the decision in *Walter v. Heller & Co., Inc. v. Convalescent Home, supra,* is difficult to understand. *Heller* did not even involve an arbitration agreement - instead, it involved an equipment (computer) lease. Moreover, the court refused to apply the "unconscionability doctrine" because the lease gave rights to, and imposed duties on, both the lessor and lessee. (365 N.E.2d at 1290) Here too the Arbitration Agreement gave rights to, and imposed duties on, both plaintiff an Bill Kay, and both are required to submit most of their disputes with each other to arbitration.

### IV.

### THE FACT THAT PLAINTIFF GAVE UP CERTAIN "RIGHTS" AS A RESULT OF THE ARBITRATION AGREEMENT DOES NOT RENDER IT UNENFORCEABLE

In his Response (at pp. 10-11), but without citation to supporting authority, plaintiff argues that the Arbitration Agreement is unconscionable, and thus not enforceable, because it requires him to give up the right to recover punitive damages and attorneys' fees. This agreement was not advanced when plaintiff resisted Bill Kay's first motion to stay and compel arbitration, and it is not in plaintiff's complaint.

As to punitive damages, even if the Arbitration Agreement was silent with respect to punitive damages, an arbitrator could not award them. In Illinois an arbitrator is prohibited from awarding punitive damages unless "there is an <u>express provision</u> authorizing such relief <u>in the arbitration agreement</u>." *Ryan v. Kontrick*, 304 Ill.App.3d 852, 710 N.E.2d 11, 14 (1st Dist. 1999),

*appeal denied*, 185 Ill.2d 666, 720 N.E.2d 1105; *Edward Electric Co. v. Automation, Inc.*, 229 Ill.App.3d 89, 593 N.E.2d 833 (1992) (emphasis added). Here, the Arbitration Agreement did not expressly authorize relief in the form of punitive damages. As such, the prohibition against punitive damages is neither of consequence, nor a basis for disregarding the plaintiff's obligation to submit to arbitration.

As to attorneys' fees, it is noteworthy that under both the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c), and the Federal Odometer Act, 49 U.S.C. 32710, only a "court" can award attorneys' fees. Thus, the fact that the Arbitration Agreement bars an arbitrator from awarding such fees is of no consequence. To uphold Morgan's argument would mean that no agreement to arbitrate claims under either act would be enforceable.

Furthermore, it is noteworthy that under the Arbitration Agreement, both plaintiff and Bill Kay have agreed to forego the opportunity to claim punitive damages and attorneys' fees.[5] This mutual relinquishment of a so-called "right" demonstrates, if anything, that the Arbitration Agreement was not one sided.

For plaintiff to sustain a claim that he was fraudulently induced to execute the Arbitration Agreement, he must allege and then prove a statement of material fact, made to induce the other party to act, the statement is false and known by the party making it to be false, and the party to whom the statement is made must reasonably believe it to be true and rely upon it to his

---

[5] An automobile dealer who successfully defends a Consumer Fraud Act claim can recover attorneys' fees. *See, Graunke v. Elmhurst Chrysler Plymouth, Inc.*, 247 Ill.App.3d 1015, 617 N.E.2d 858, 863 (2nd Dist. 1993). The Federal Odometer Act has no provision allowing an award of punitive damages. *See*, 49 U.S.C. § 32710(a). The Consumer Fraud Act allows for punitive damages, against a car dealer, by the "court" only for conduct which is "willful or intentional and done with an evil motive or reckless indifference. (815 ILCS 505/10a(a)).

detriment. *Peddinghaus v. Peddinghaus*, 295 Ill.App.3d 943, 692 N.E.2d 1221, 1225 (1st Dist. 1998); *Douglas v. Wones*, 120 Ill.App.3d 36, 458 N.E.2d 514, 523 (2nd Dist. 1983).

As with any claim of fraud, plaintiff is required to recite the facts giving rise to the fraud claim with specificity and particularity. *See,* Fed.R.Civ.P. 9(b); *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). The person claiming fraud is expected to provide allegations containing the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated. *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 974 F.2d 918, 924 (7th Cir. 1992); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This obligation requires the plaintiff to plead the content of the misrepresentation. *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050 (7th Cir. 1998). Moreover, a person cannot enter into a transaction, closing his eyes to available information, and then claim to have been deceived by the words or conduct of another party. *Broberg v. Mann*, 66 Ill.App.2d 134, 213 N.E.2d 89 (2nd Dist. 1965). Furthermore, reliance upon a misrepresentation must be reasonable. (*Id.*) When the alleged fraud involves the execution of an instrument, the misrepresentation must be such as to induce the party to allegedly defraud to execute an instrument which he did not intend to execute. *Mt. Zion State Bank & Trust v. Weaver*, 226 Ill.App.3d 783, 589 N.E.2d 983, 986 (4th Dist. 1992).

Here, plaintiff does not deny that his signature is on the Arbitration Agreement. He does not tell us what misrepresentation was made to him, who made the misrepresentation, or when it was made. Yet his signature appears less than one inch below a capitalized sentence acknowledging that he had read the "ARBITRATION AGREEMENT" and that he agreed "TO ITS TERMS AND CONDITIONS."

10

Clearly, the information concerning the document was not only available to him, but it was in front of his eyes. As shown below, the fact that he may have chosen not to read the document (or "closed his eyes" to the acknowledgment), bars his fraudulent inducement claim.

## V.

### PLAINTIFF'S FAILURE TO ADEQUATELY PLEAD FRAUD IN THE INDUCEMENT BARS AN EXAMINATION OF HIS FRAUD CLAIM

Plaintiff's final argument (Response, pp. 12-13) is that because he alleged fraud in obtaining his "assent" to the Arbitration Agreement, the Court, as the trier of fact, must determine that issue. Plaintiff cites *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 110 (3rd Cir. 1993).

Of course, plaintiff's amended complaint does not adequately plead fraud[6] and does not comply with the pleading requirements of Rule 9(b). (*See*, pp. 3-5, *supra*) That alone dooms plaintiff's argument.

Moreover, plaintiff's reliance on *Pritzker* does not save the argument. Plaintiff claims that in *Pritzker* the "court found that if there is a well founded claim that the arbitration agreement resulted from fraud or coercion a party may not be compelled to arbitrate claims." (Response, p. 7) The *Pritzker* court made no such finding. In fact, it upheld an arbitration agreement by "rejecting an insinuation" that an arbitration clause represented a contract of adhesion, or was a result of fraud or overwhelming economic power. (7 F.3d at 1118)

---

[6] In order to successfully allege fraud, a plaintiff must plead (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) an intent to induce the other party to act; (4) reasonable reliance on the truth of the statement; and (5) damage resulting from such reliance. *Damian Services Corp. v. White*, 1998 WL 596466 (N.D. Ill. 1998); *see also, Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d 968 (2nd Dist. 1995).

11

Because plaintiff has not suggested a contract of adhesion, and because the facts do not support a claim of "overwhelming" economic power, plaintiff can resist arbitration if, and only if, he has properly alleged facts which would demonstrate that his signature on the Arbitration Agreement was obtained by fraud. Clearly he has not, and thus he should be compelled to submit his claims to arbitration.

When reviewing a motion to stay a judicial proceeding and to compel arbitration, the trial court must concern itself solely with whether an agreement exists to arbitrate the dispute in question. *See, Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 715-6 (7th Cir. 1967); *J.K. Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill.App.3d 663, 669, 456 N.E.2d 889 (2nd Dist. 1983).

If there is a claim that a party was fraudulently induced to enter into an agreement to arbitrate, the trial court must address that issue first. *See, Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587 (7th Cir. 2001); *Aste v. Metropolitan Life Ins. Co.*, 312 Ill.App.3d 972, 982-84, 728 N.E.2d 629, 637-38 (1st Dist. 2000); *Goldberg v. Focus Affiliates, Inc.*, 2001 WL 649556 (N.D.Ill., June 8, 2001). If the party claiming fraud in the inducement has not met his burden of alleging facts which would support the claim, the trial court must then determine whether the dispute at issue is covered by the arbitration agreement. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 938 (1995); *Herwig v. Hahnaman-Albrecht, Inc.*, 1997 WL 72079, *2 (N.D.Ill., Feb. 13, 1997). Here, as shown above, plaintiff's allegations, as set forth in his amended complaint and in his affidavit, even if true, fall far short of demonstrating fraud in the inducement. Thus, the only issue is whether the claims raised in the complaint are covered by the Arbitration Agreement.

Plaintiff does not argue that his claims are not covered by the Arbitration Agreement, nor could he. In the Arbitration Agreement, plaintiff agreed to arbitrate "any controversy or claim"

12

other than those specifically excluded. The claims raised in plaintiff's amended complaint are not excluded from arbitration. Federal law favors interpretation of arbitration agreements "with a healthy regard for the federal policies favoring arbitration." *Moses H. Cohen Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 103 S.Ct. 927, 941 (1983). Moreover, any doubts concerning arbitrability should be resolved in favor of arbitration, regardless of the problem at hand. *See also, Tyco Laboratories, Inc. v. DASI Industries, Inc.*, 1993 WL 356929 (N.D. Ill. 1993). There is no question that the "generic" arbitration provision in the Arbitration Agreement requires the arbitration of all plaintiff's claims. *See, Nagle v. Nadelhoffer, Nagle, Kuhn, et al.*, 244 Ill.App.3d 920, 925, 613 N.E.2d 331, 335 (2nd Dist. 1993); *Johnson v. Baumgardt*, 216 Ill.App.3d 658, 576 N.E.2d 515, 520 (2nd Dist. 1991).

The purpose of arbitration is to avoid the formalities, delay and expenses of litigation in court. *Hough v. Osswald*, 198 Ill.App.3d 1056, 1057, 145 Ill.Dec. 147, 556 N.E.2d 765 (1st Dist. 1990). Arbitration as a means of dispute resolution is favored and is regarded by courts as an effective and cost-efficient method of resolving disputes. *United Cable Corp. v. Northwest Illinois Cable Corp.*, 128 Ill.2d 301, 306, 538 N.E.2d 547 (1989).

A party who has agreed to submit disputes to arbitration bears the burden of proving that his claims are not suitable for arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Even claims arising under a statute designed to further important social policies may be arbitrated as long as a prospective litigant may effectively vindicate his statutory claim in the arbitral forum. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). Courts are required to give due regard to the federal policy favoring arbitration and to resolve ambiguities as to the scope of an arbitration clause in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 1218 (1995).

13

## IV.

## CONCLUSION

Plaintiff has failed to properly plead facts to support his claim that he was fraudulently induced to sign the Arbitration Agreement. He does not argue that the claims set forth in his amended complaint are not otherwise subject to arbitration pursuant to the terms of the Arbitration Agreement. As such, and for the reasons set forth in this memorandum, defendant Ogden Chrysler Plymouth, Inc. prays that this Court enter an order staying these proceedings and compelling arbitration.

Ogden Chrysler Plymouth, Inc.,
Defendant,

By: _____
One of its Attorneys

Stuart D. Gordon
Zukowski, Rogers, Flood & McArdle
One North LaSalle Street, 45th Floor
Chicago, Illinois 60602
(312) 377-4450
Attorney No. 18842

Arbitration Agreement

26 JAN 2001
Date

In this Arbitration Agreement, the term "you" refers to the buyer(s), who sign below. The terms "we" and "us" refers to Ogden Chrysler Plymouth, Inc., d/b/a Bill Kay Chrysler Plymouth of Downers Grove. By agreeing to arbitrate, you and we give up some rights, including the right to go to court, the right to a jury trail, and any right that buyer might have to seek punitive damages.

The term "vehicle" is the vehicle which is the subject of a purchase order executed on this date and is more fully described as: Make __1997__ __CHRY__, Model __26 JAN 2001__, VIN __4C3AU52N3VE193160__.

A "Dispute" is any controversy or claim (other than: a claim relating to the buyer's failure to pay an agreed upon down payment or failure to pay any amount due pursuant to a promissory note executed in lieu of a cash down payment; as to the issuance, by buyer, of a check which is not honored by the buyer's bank; a buyer's failure to provide good title to a trade-in vehicle; a misrepresentation, by buyer, concerning the amount remaining due on any loan concerning a trade-in vehicle; any claim relating to the possession, repossession or replevin of the vehicle; or relating to actions to enforce any Retail Installment Contract executed by you in connection with the purchase of the vehicle) arising from or relating to the vehicle you have purchased from us on the date shown above. The term "dispute" also includes, but is not limited to, claims relating to the negotiation or breach of any purchase order and/or bill of sale relating to the vehicle, and any dispute relating to any vehicle service contract purchased or provided at the time the vehicle was purchased or within thirty (30) days thereafter. The term "dispute" also includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement.

You and we agree that if any Dispute arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the rules of the Better Business Bureau then in effect, and such arbitration shall be held in either Wheaton, Illinois or Chicago, Illinois, with the arbitrator rendering a written decision with separate findings of fact and conclusions of law.

An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall not have the right to award punitive damages or attorneys' fees to any party. All arbitration costs and expenses shall be shared equally by the parties. Judgment on the award may be entered by either party in the highest local, state or federal court or before any administrative body. This Arbitration Agreement shall, with respect to such dispute, survive the termination or expiration of any purchase order and/or bill of sale, or any retail installment contract executed at the time the vehicle is purchased. Nothing in this Arbitration Agreement shall be deemed to give the arbitrator(s) any authority, power or right to alter, change, amend, modify, add to or subtract from the provisions of the documents executed at the time of the purchase of the vehicle.

The parties agree that the transactions relating to the Obligation involve interstate commerce and that this Arbitration Agreement shall be subject to and governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq., and the Uniform Arbitration Act, 710 ILCS 5/1 et. seq. The parties further agree that if any provisions of this Arbitration Agreement are found to be invalid, the remainder of this Arbitration Agreement remain in full force and effect, the parties agree that this Arbitration Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective heirs, educators, administrators, representatives, subsidiaries, affiliates, successors, and assigns.

BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU HAVE READ THIS ARBITRATION AGREEMENT AND THAT YOU AGREE TO ITS TERMS AND CONDITIONS.

JAMES E MORGAN

_____        _____
Buyer                                   Co-Buyer

_____
Seller: Odgen Chrysler Plymouth, Inc., d/b/a
Bill Kay Chrysler Plymouth of Downers Grove

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES MORGAN, )
 )
        Plaintiff, )
 )
v. ) No. 01 C 3871
 ) Judge Joan Gottschall
BILL KAY CHRYSLER PLYMOUTH, )
 )
        Defendant. )

## NOTICE OF FILING

To: Larry P. Smith, Esq.
     Krohn & Moss, Ltd.
     120 West Madison Street
     10th Floor
     Chicago, Illinois 60602

DOCKETED
DEC 27 2001

**PLEASE TAKE NOTICE** that on December 21, 2001, I filed the attached **Defendant's Reply Memorandum in Support of Its Motion to Strike and Dismiss Counts VI and VII of Plaintiff's Amended Complaint and to Stay and Compel Arbitration** with the Clerk of the Court for the Northern District of Illinois, Eastern Division.

                       Ogden Chrysler Plymouth, Inc.,
                       Defendant,

                       By: _____
                            One of its Attorneys

Stuart D. Gordon
Zukowski, Rogers, Flood & McArdle
One North LaSalle Street, 45th Floor
Chicago, Illinois 60602
(312) 377-4450

## CERTIFICATE OF SERVICE

    I, Sydette Macklis, a non-attorney, duly sworn on oath, state that I caused the service of the above-referenced document(s) by placing a copy of same, proper postage prepaid, in the U.S. Mail at One North LaSalle Street, Chicago, Illinois, on December 21, 2001.

_____