# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3871 | **DATE** | 7/17/2002 |
| **CASE TITLE** | James Morgan vs. Bill Kay Chrysler Plymouth | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Order. Defendant's motion to stay [13-3] and compel arbitration [13-4] is granted. Defendant's motion to strike [13-1] and to dismiss [13-2] Counts VI and VII is denied as moot. These proceedings are stayed pending arbitration of Morgan's claims.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 3871 |
| v. | ) | |
| | ) | |
| BILL KAY CHRYSLER PLYMOUTH, | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff James Morgan sues defendant Bill Kay Chrysler Plymouth ("Bill Kay"), alleging violations of the Federal Odometer Requirements Act, 49 U.S.C. § 32710, the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Fraud Act"), 815 ILCS § 505/2, and common law fraud. Bill Kay moves to strike and dismiss Counts VI (Illinois Fraud Act) and VII (common law fraud) of Morgan's amended complaint, to stay these proceedings, and to compel the arbitration of the remaining claims. For the reasons set forth below, the court grants Bill Kay's motion in part and denies it in part.

### Background

On January 26, 2001, plaintiff Morgan purchased a used 1997 Chrysler Sebring from defendant Bill Kay. Morgan signed an arbitration agreement, which provided that Morgan would submit any dispute with Bill Kay to arbitration. (First Am. Compl. Ex. D.) The arbitration agreement defines a "dispute" as "any controversy or claim . . . arising from or relating to the vehicle you have purchased . . . . The term 'dispute' also includes any questions regarding

whether a matter is subject to arbitration under this Arbitration Agreement." (*Id.*)

On May 24, 2001, Morgan filed a five-count complaint against Bill Kay, alleging odometer fraud arising under federal law, Illinois statutory law, and common law fraud. Bill Kay moved to stay and compel arbitration, pointing to the arbitration agreement. On October 1, 2001, this court denied Bill Kay's motion without prejudice. (Order of 10/1/01.) In its order, the court observed that plaintiff apparently was arguing that he never entered the arbitration agreement on which Bill Kay relies. However, the court concluded that Morgan was not clear in his averment to this fact and that the court was unable to determine whether it should grant Bill Kay's motion. Therefore, the court ordered Morgan to amend his complaint "to include a fraud claim relating to the arbitration agreement." (*Id.*) "Only if plaintiff lays out his theory of fraud, can the court determine with reasonable certainty whether plaintiff is merely claiming fraud in the inducement (a matter for the arbitrator), or is adequately alleging that he never agreed to arbitrate." (*Id.*)

On October 12, 2001, Morgan filed his First Amended Complaint, which consists of the original complaint plus two additional fraud claims, brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI) and common law fraud (Count VII). In the amended complaint, Morgan admits that he signed the arbitration agreement. However, he claims that Bill Kay failed to explain the purpose of the agreement and fraudulently induced him to sign it. Defendant Bill Kay moves to strike and dismiss Counts VI and VII, to stay these proceedings, and to compel the arbitration of Morgan's claims.

**Discussion**

The parties appear to agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*,

applies to the arbitration agreement. Sections 3 and 4 of the FAA require federal courts to grant any request for a stay under a valid arbitration clause and to direct the parties to proceed to arbitration. 9 U.S.C. §§ 3, 4. "It is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993). Before granting the motion to stay and compel arbitration, the court must resolve two questions: "(1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, (2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate." *Herwig v. Hahnaman-Albrecht, Inc.*, No. 96 C 6107, 1997 WL 72079, at *2 (N.D. Ill. Feb. 13, 1997) (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)). Morgan does not dispute the second prong of the required analysis—that the claims in his complaint fall within the scope of the arbitration agreement. Therefore, the court considers only the first prong.

When a party claims that he never agreed to arbitrate, the issue must be resolved by the court. *See, e.g., Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589-90 (7th Cir. 2001). In Morgan's amended complaint, he makes several allegations attempting to comply with this court's October 1, 2001 request for him to explain his theory of fraud. Paragraph 48 of the amended complaint states: "At the time Plaintiff purchased the Sebring, Defendant presented Plaintiff with a stack containing numerous documents and required that Plaintiff affix his signature on said documents, without explaining to Plaintiff what he was signing." Among these documents was the arbitration agreement. Paragraphs 50 and 51 state that "at no time did Defendant explain to Plaintiff the contents [sic] the aforementioned Arbitration Agreement, nor

3

did Defendant explain the consequences of signing said agreement . . . . If Defendant provided any explanation for the purpose of the Arbitration Agreement, said explanation was untrue and constituted a fraudulent misrepresentation." Finally, paragraph 56 states that Bill Kay fraudulently induced Morgan to sign the agreement.

Morgan's allegations fail adequately to plead that he never agreed to arbitrate. First, he admits that he signed the arbitration agreement. He claims that Bill Kay never explained the agreement, but no court has held that to enforce a contract, a defendant car dealer must explain the agreement to the consumer. Furthermore, to the extent that Morgan claims that he did not read the arbitration agreement, this allegation also fails. *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 (N.D. Ill. 1999) ("[A] party's failure to read a contract does not invalidate unread contractual terms or excuse that party's performance under the contract.").

This leaves Morgan's allegation that if Bill Kay did explain anything, whatever it said was fraudulent. Besides the fact that this allegation fails to comply with Federal Rule of Civil Procedure 9(b), this court has already explained that an argument of fraudulent inducement is reserved for the arbitrator. *Sphere Drake*, 256 F.3d at 590-91. Morgan does not allege, as this court presumed he might be trying to do, "that his signature on the arbitration agreement is . . . the equivalent of a forgery, because if he signed the arbitration agreement, it was because the agreement was hidden from view and he was told he was signing something else." (Order of 10/1/01.) Accordingly, the court will stay these proceedings and compel arbitration unless the court finds that the arbitration agreement is invalid or unenforceable.

Morgan argues that the arbitration agreement should be held invalid as "unconscionable,

4

fraudulent and contrary to public policy." (Pl.'s Resp. at 7.) First, he contends that Bill Kay was the "stronger party" in the contract and exploited this fact by overwhelming Morgan with a massive amount of sophisticated documents to sign, "which an average consumer would have trouble sifting through." (*Id.* at 9.) In addition, Morgan claims that the arbitration agreement is "one-sided" because it "preserves the right of the dealer to obtain judicial redress, without any limitations imposed by arbitration, for wrongs committed against it by the consumer." (*Id.* at 9.) Specifically, he points to agreement provisions that allow the dealer to avoid arbitration for certain claims against the buyer. Finally, Morgan argues that the arbitration agreement conflicts with Illinois state policy.

Under the FAA, arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "State contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally." *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In this case, Illinois law applies. *See id.* "In assessing whether a contractual provision should be disregarded as unconscionable, Illinois courts look to the circumstances existing at the time of the contract's formation, including the relative bargaining positions of the parties and whether the provisions' operation would result in unfair surprise." *Cognitest Corp. v. Riverside Pub. Co.*, 107 F.3d 493, 499 (7th Cir. 1997) (citing *J.D. Pavlak, Ltd. v. William Davies Co.*, 351 N.E.2d 243, 246 (Ill. App. Ct. 1976)).

"A contract is unconscionable when, viewed as a whole, 'it is improvident, oppressive, or

5

totally one-sided.'" *We Care Hair*, 180 F.3d at 843 (quoting *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, 1232 (Ill. 1983)). "The presence of a commercially unreasonable term, in the sense of a term that no one in his right mind would have agreed to, can be relevant to drawing an inference of unconscionability but cannot be equated to it." *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992) (citing *Lincoln Cardinal Partners v. Barrick*, 578 N.E.2d 316, 320 (Ill. 1991), and *Amoco Oil Co. v. Ashcraft*, 791 F.2d 519, 522 (7th Cir. 1986)). Illinois courts often invalidate arbitration agreements when they possess "earmarks of an adhesive contract," or, in other words, they "lack mutuality of remedy and [are] the result of unequal bargaining positions in which the purchaser has little opportunity for arm's length negotiation." *Parker v. Am. Family Ins. Co.*, 734 N.E.2d 83, 85 (Ill. App. Ct. 2000).

The court cannot conclude that the arbitration agreement here creates unfair surprise. The agreement clearly discloses that certain claims of the seller are not subject to arbitration. The court disagrees with Morgan's characterization of the agreement as containing "an overwhelming litany of terms, exclusions, and other elaborately worded devices." (Pl.'s Resp. at 9.) The agreement is contained on one side of one page and consists of seven paragraphs. The first paragraph simply states: "By agreeing to arbitrate, you and we give up some rights, including the right to go to court, the right to a jury trial, and any right that buyer might have to seek punitive damages." (First Am. Compl. Ex. D.) The agreement explicitly provides the definition of any "dispute" that would require arbitration, as well as exceptions. The final paragraph states: "BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU HAVE READ THIS ARBITRATION

AGREEMENT AND THAT YOU AGREE TO ITS TERMS AND CONDITIONS." (*Id.*) Any reasonable consumer who reads the arbitration agreement would understand these terms and the consequences of his or her assent. *See We Care Hair*, 180 F.3d at 843 (holding that arbitration agreement "clearly disclosed" that defendant could avoid arbitration for certain claims).

The court also concludes that the arbitration agreement is not one sided or oppressive. The only "one sided" nature of the agreement is that Bill Kay may avoid arbitration and pursue certain claims against the buyer in court. Some courts consider this argument to be an issue of "mutuality of obligation." *See Lopez v. Plaza Fin. Co.*, No. 95 C 7567, 1996 WL 210073, at *4 (N.D. Ill. Apr. 25, 1996). Under Illinois law, mutuality of obligation is required only "to the extent that both parties to an agreement are bound or neither is bound. If the requirement of consideration has been met[,] mutuality of obligation is not essential." *S.J. Groves & Sons Co. v. State*, 444 N.E.2d 131, 134 (Ill. 1982) (citing Restatement (Second) of Contracts § 79 (1981) (internal quotations and other citations omitted)), *overruled on other grounds by Rossetti Contracting Co. v. Court of Claims*, 485 N.E.2d 332, 335 (Ill. 1985). Applying Illinois law, numerous courts in this district have rejected the position that for an arbitration agreement to be mutual, both sides must promise to arbitrate at least some specified set of claims. *See, e.g., Dorsey*, 46 F. Supp. 2d at 807 ("[C]ontracts need not be reciprocal to be enforceable."); *Design Benefit Plans, Inc.*, 940 F. Supp. 200 (N.D. Ill. 1996) (applying *S.J. Groves* in a challenge to an arbitration clause); *but see Lopez*, 1996 WL 210073, at *5 (invalidating arbitration agreement where the defendant did not obligate itself to submit any of its own claims to arbitration). In this case, even if Bill Kay is not obligated to arbitrate any claims, the contract is clearly supported by

7

consideration on both sides and explicitly provides that both parties are bound by an arbitrator's decision. This case does not involve an "escape hatch clause," as found in insurance contracts and condemned by Illinois courts, which provides that an insurer is not bound by an unfavorable arbitration decision. *Parker*, 734 N.E.2d at 85. Rather, Bill Kay's agreement that it will be bound by even an unfavorable result in arbitration is clear consideration.

Morgan's argument about Bill Kay's superior bargaining power is also unconvincing. It appears that Morgan had no choice but to sign the arbitration agreement if he wanted the car. However, this is also true of *every* document he signed. In general, arguments about the "take it or leave it" nature of a transaction and about unequal bargaining power go to the validity of the entire contract and are more appropriately resolved by an arbitrator. *Dorsey*, 46 F. Supp. 2d at 806. When ruling on a motion to compel arbitration, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *see also Sweet Dreams Unlimited*, 1 F.3d at 641 ("[A] dispute, which has as its object the nullification of a contract, 'arise[s] out of' that same contract" and, thus, is arbitrable); *Dorsey*, 46 F. Supp. 2d at 806 (holding that "general" unconscionability contentions are insufficient to defeat a motion to compel). In this case, Morgan's "bargaining power" argument appears to be directed at the entire bargaining process, not just his signing of the arbitration agreement. (First Am. Compl. ¶ 48 ("Defendant presented Plaintiff with a stack containing numerous documents and required that Plaintiff affix his signature on said documents, without explaining to Plaintiff what he was signing.").) This argument is best reserved for the arbitrator.

Even were the court to reach the merits of Morgan's bargaining power argument, it would find it unconvincing. Although it is clear that Bill Kay enjoyed the superior bargaining position, "mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club*, 457 N.E.2d at 1232; *cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Moreover, in this case, Morgan's bargaining position was not so inferior that he should be characterized as helpless. Morgan has not alleged that he was in such a vulnerable spot that he had no choice but to buy a 1997 Sebring from Bill Kay. He fails to convince the court that the disparity in bargaining power renders the arbitration agreement unconscionable. *See Tezky v. Woodfield Chevrolet*, No. 00 C 5718, 2001 WL 946188, *2 (N.D. Ill. Mar. 13, 2001) (rejecting plaintiffs' "bargaining power" argument because "[p]laintiffs could have easily looked to other dealers or private sellers in their pursuit of a used Ford Mustang").

Finally, Morgan argues that the arbitration agreement is contrary to Illinois state policy. Specifically, he points out that the agreement denies him the right to attorney's fees and punitive damages, which the Illinois legislature found important enough to include in the Illinois Fraud Act, 815 ILCS § 505/10a(c). Bill Kay correctly points out, however, that in Illinois an arbitrator is *always* prohibited from awarding punitive damages unless "there is an *express provision* authorizing such relief *in the arbitration agreement*." *Ryan v. Kontrick*, 710 N.E.2d 11, 14 (Ill. App. Ct. 1999). Bill Kay is also correct that, according to the Illinois Fraud Act, 815 ILCS 505/10a(c), only a "court" can award attorney's fees. Thus, *any* arbitration agreement that

9

involves issues of punitive damages or fraud would be vulnerable to Morgan's policy argument. His argument is belied by the fact that "Congress and Illinois have both implemented a strong policy favoring arbitration agreements." *Dorsey*, 46 F. Supp. 2d at 808. Therefore, the court concludes that the arbitration agreement does not conflict with public policy.

**Conclusion**

For the foregoing reasons, defendant Bill Kay's motion is granted in part. These proceedings are hereby stayed pending arbitration of Morgan's claims. Bill Kay's motion to dismiss and to strike Counts VI and VII is denied as moot.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: July 17, 2002